**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 2 6 2022 ★

BROOKLYN OFFICE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 95-CR-754 |
| Plaintiff, | ) | Judge Sterling Johnson |
| -vs- | ) | |
| | ) | |
| VITO GUZZO, | ) | Motion for |
| Defendant, | ) | Compassionate Release |

Now comes Vito Guzzo (hereinafter "Defendant"), acting in <u>pro per</u>, and hereby moves

for compassionate release in the above entitled case.

A brief in support of said motion is attached hereto and incorporated herein by reference.

Respectfully submitted,

_Vito Guzzo_
Vito Guzzo, <u>Pro Se</u>
Reg. No. 48164-053
FCI Danbury
Route 37
Danbury, CT  06811

1

<u>Brief</u>

This is an old case.  In 1997 an indictment was returned charging Defendant with numerous counts relating to a RICO enterprise.  He entered a plea of guilty to a Racketeering count and was sentenced to 456 months (38 years) incarceration.  He later filed a motion under 28 USC section 2255 which was denied.

Defendant now moves the Court for a compassionate release based on a number of reasons.

<u>First Step Act</u>

In the First Step Act, Congress amended 3582 (c)(1)(A) to allow a prisoner to file a motion for compassionate release on his own behalf.  Before the First Step Act, a motion for compassionate release could be brought only by the Director of the Bureau of Prisons (the "BOP").  <u>United States v. York</u>, 2019 WL 3241166 at 4 (E.D. Tenn. July 18, 2019) (citing 18 USC section 3582 (c)(1)(A) (2017).  The First Step Act modified section 3582 (c)(1)(A) with the intent of "increasing the use and transparency of compassionate release."  Pub. L. No. 115-391, 132 stat. 5194, 5239 (capitalization omitted); <u>see United States v. Ebbers</u>, 2020 WL 91399 at 7 (citing S. Rep. 98-225 at 121 (1983) (S.D.N.Y. Jan. 8, 2020).

Section 3582 (c)(1)(A) now provides that:

[T]he Court, upon motion of the Director of Prisons, or the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf of, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553 (a) to the extent they are applicable, if it

finds that – (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the sentencing commission.

Congress directed the United States Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582 (c)(1)(A) of Title 18, [to] describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 USC section 994 (t); see also 28 USC 994 (a) (2) (c). In the United States Sentencing Commission Guidelines Manual (the "USSG"), the Sentencing Commission has published a policy statement addressing the standards for compassionate release. See USSG section 1B1, (the "Policy Statement"). 1B1.13. That Policy Statement reiterates that a court may reduce a term of imprisonment under section 3582 (c)(1)(A) if "extraordinary and compelling reasons warrant the reduction" and "after considering the factors set forth in 18 USC section 3553 (a) to the extent that they are applicable." Id. The Policy Statement also directs courts to determine that "the defendant is not a danger to the safety of any other person or to the community," before reducing a term of imprisonment under section 3582 (c)(1)(A). Id.

Section 3582 (c)(1)(A) also requires a defendant to exhaust his administrative remedies with the BOP before seeking judicial relief. United States v. Alan, 2020 WL 2845694, at 2 (6th cir. June 2, 2020). A defendant may exhaust his administrative remedies in one of two ways: (1) by exhausting his "administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) on "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 USC section 3582 (c)(1)(A).

In the present case, Defendant has exhausted his administrative remedies. Defendant made a request to the warden for compassionate release. Thereafter, the warden did not answer

Defendant's request within 30 days. (Exhibit A). Thus, this Court has jurisdiction to rule on Defendant's request.

Elderly Prisoner with Medical Concerns

Defendant is an elderly prisoner with medical concerns and is more susceptible to Covid-19. The PSR states that in August 1990, Defendant was the victim of a shooting, and sustained injuries to his back and lungs. He underwent surgery to remove a bullet from his left lung. A portion of his lung was removed during surgery.

On March 13, 1996, the PSR states that Defendant was once again the victim of a shooting. He sustained six gunshot wounds to his face, neck, arm and chest. He was taken to Elmhurst Hospital in Queens, New York, where an exploratory laparotomy, splenectomy, and partial pancreatectomy were performed. Subsequent x-rays revealed two fractured ribs, a fractured mandible, and bullet fragments in his chest. Also during the shooting, one bullet transected the right optic nerve. As a result, Defendant lost vision in that eye.

He remained at Elmhurst Hospital for twenty-seven days, and was mechanically ventilated for at least 96 consecutive hours. Defendant also suffered excessive bleeding from his nose with aspiration into his lungs, swelling in his face and neck, distended abdomen, hypoxia, an aneurism in the right lateral maxillary artery, respiratory distress and failure, abdominal bleeding, slurred speech, occluded artery, and an inability to breathe through his nose.

On April 9, 1996, Defendant was transferred from Elmhurst Hospital to Mount Sinai Medical Center in New York, New York. He remained at this hospital for nine days. During this time, he underwent surgery to remove the bullet fragments in his chest, a papillotomy, and a gallstone removal. He was subsequently readmitted to Mount Sinai Medical Center for

hypovolemia (decreased blood volume) and gastrointestinal bleeding.  An endoscopy and a blood transfusion were performed.  (See Exhibit B).

Based on these shootings, Defendant is now asplenic.  He has no spleen which functions to fight off viruses.  He has already contracted Covid-19 once and was severely ill.  He was told that if he were to contract it again it would probably kill him.  The Center for Disease Control (CDC) has compiled a list of medical conditions that place a person at high risk of severe illness if they contract Covid-19 and a person's age[1] are among these conditions along with being asplenic. (see https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html).  There is presently a severe outbreak of Covid-19 within the Federal Bureau of Prisons and hundreds of prisoners have died from this disease.  There are at least 20 inmates with Covid-19 in the institution where Defendant is presently incarcerated at the time of this writing.  There are several different variants of Covid arriving now in the BOP and starting to spread fast.  The CDC has stated that people who have a condition or are taking medications that weaken their immune system may not be protected even if they are fully vaccinated.  Thus even the vaccine cannot protect Defendant based on him being asplenic.  It is much more difficult to protect yourself from Covid-19 in the prison system.  Several federal courts have granted compassionate release to inmates who suffer from many of the conditions listed by the CDC including a person's age and other medical conditions.  See e.g., United States v. Howard, 2020 WL 2200855, at 3 (E.D.N.C. May 6, 2020) (defendant was 52 years old and suffering from COPD and obesity, and other issues).

Since the beginning of the pandemic Defendant has been worried about contracting Covid-19.  Given his age and his medical conditions he is concerned about what might happen to

---

[1] Defendant is presently 57 years old.

him if he contracts Covid-19 again. He is greatly concerned about the institution's ability to keep him separated from others, but further that if he does get sick again, that the institution lacks the ability to properly meet his medical needs. He therefore requests this Court to order him released. Given these circumstances, Defendant requests this Court to grant him a compassionate release as permitted by 18 USC section 3582 (c)(1)(A).

### Extraordinary Long Sentence

Defendant has been incarcerated for approximately 25 years. With his good time he only has a few years left on his sentence. According to the Overview of Federal Criminal Cases published by the United States Sentencing Commission for the fiscal year of 2019, the average sentence imposed for murder is 255 months, a sentence that Defendant has already served. U.S. Sentencing Comm., Overview of Federal Criminal Cases Fiscal Year 2019, at 9 (2020). Also see United States v. Rios, 2020 U.S. Dist. LEXIS 230074 (D. Conn. Dec. 8, 2020).

In the PSR, the United States Probation Department incorrectly calculated my guidelines sentencing range to be life imprisonment because the calculations were above a level 43.

The Application Note 2 of Chapter 5 of the Guidelines Manual addresses this issue which states as follows:

"In rare cases, a total offense level of less than 1 or more than 43 may result from application of the guidelines. A total offense level of less than 1 is to be treated as an offense level of 1. An offense level of more than 43 is to be treated as an offense level of 43."

Thus, my guideline calculations should have readjusted to a level 43 once the Probation Department determined that the offense level exceeded the level 43.

I was supposed to receive a three (3) level reduction for an acceptance of responsibility which would have re-adjusted the offense level to level 40 with a guideline range of 25 to 30.6 years of incarceration and a criminal history level one.

Moreover, under New York law conspiracy to commit murder carries a sentence of 0 to 25 years. See N.Y. penal law section 105.15. And a murder charge carries a sentence of 25 years to life. N.Y. penal law section 125.25. Defendant has already served this sentence because his Racketeering murder conviction is governed by state law. See United States v. Powell, 2019 U.S. Dist. LEXIS 171895 (D. Conn. Oct. 3, 2019).

The Fourth Circuit has instructed that "courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" United States v. McCoy, 961 F. 3d 271, 284 (4th cir. 2020). The McCoy court stated that district courts have the discretion to deem sentencing disparities, such as these presented here, as extraordinary and compelling justifications for relief. United States v. Ramos, 2021 U.S. Dist. LEXIS 41776 (D. of Md. March 4, 2021). The Second Circuit recently recognized that the First Step Act "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them on motions for compassionate release." United States v. Brooker, 976 F. 2d 228, 237 (2d Cir. 2020) ([A] district court's discretion in this area – as in all sentencing matters is broad).

Numerous District Courts have reduced these extraordinary long sentences under the new compassionate release statute entitled First Step Act. See United States v. Torres, 2020 U.S. Dist. LEXIS 95393 (S.D.N.Y. June 1, 2020) (life sentences reduced to time served); United States v. Mondera, 2020 U.S. Dist. LEXIS 37483 (S.D. Cal. March 3, 2020) (mandatory life without parole reduced to time served); United States v. Perez, 2021 U.S. Dist. LEXIS 41040

(Dist. of Conn. March 4, 2021) (Defendant convicted of murder-for-hire and sentenced to mandatory life reduced to time served); United States v. Gluzman, 2020 U.S. Dist. LEXIS 131749 (S.D.N.Y. July 23, 2020) (granting compassionate release to defendant convicted of the premeditated murder of spouse and sentenced to life); United States v. Tidwell, 475 F. Supp. 3d 66 (E.D. Pa 2020) (granting compassionate release to defendant sentenced to life for murder in furtherance of a continuing criminal enterprise); United States v. Rodriguez, 2020 U.S. Dist. LEXIS 181004 (S.D.N.Y. Sept. 30, 2020) (granting compassionate release to defendant convicted of the brutal murder of a government informant and sentenced to life); United States v Rios, 2020 U.S. Dist. Lexis 230074 (D. Conn. Dec. 8, 2020) (granting compassionate release to defendant convicted of VICAR murder and sentenced to life).

Accordingly, Defendant has also demonstrated extraordinary and compelling circumstances for relief under section 3582 (c)(1)(A) based on sentencing disparities.

### Extraordinary Rehabilitation

Defendant has been completely rehabilitated. Although the compassionate release statute provides that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 USC section 994 (t) (emphasis added). But as the Second Circuit recognized in a recent decision, while rehabilitation "alone" is insufficient, it can "interact with the present coronavirus pandemic" to create an extraordinary and compelling reason for a sentence reduction. United States v. Brooker, 976 F. 3d 228, 2020 U.S. App. LEXIS 30605, 2020 WL 5739712, * 9 (2d Cir. Sept. 25, 2020). See also United States v. Millan, 2020 U.S. Dist. LEXIS 59955, 2020 WL 1674058 at *7 (S.D.N.Y. Apr. 6, 2020) ("]Congress]" use of the modifier 'alone' evidenced that [it] believed that rehabilitation is relevant to the question of whether a sentence should be reduced and that rehabilitation, when considered together with

8

other equitable factors, could constitute extraordinary and compelling reasons for a sentencing reduction.").

Here, the evidence of Defendant's rehabilitation cannot be disputed. Defendant has taken approximately 132 classes (Exhibit C). And he is still taking classes. He only has a couple minor infractions over his 25 years of incarceration. He also saved an inmate's life who attempted to commit suicide while housed at the Metropolitan Correctional Center in New York. (Exhibit D) In his 25 years of imprisonment, he has matured from a rash young man pursuing a lawless lifestyle, to a reflective, empathetic middle-aged adult. And he has done all this while realizing that he is serving a very long sentence.

The United States Supreme Court recently ruled in <u>Concepcion v. United States</u>, 2022 U.S. LEXIS 3070 (June 27, 2022), that when deciding if it should impose a reduced sentence on an individual under section 404(b) of the First Step Act of 2018, a district court may consider intervening legal and factual developments. Thus, I am requesting that the Court consider all of my rehabilitative efforts when ruling on this motion.

All of the above overwhelming evidence of rehabilitation weighs in favor of a finding that extraordinary and compelling reasons exist to modify Defendant's sentence. That Defendant has developed such an outstanding record in prison without any tangible incentive other than self-improvement, given his extraordinary long sentence weighs all the more strongly still. <u>See</u> <u>Millian</u>, 2020 U.S. Dist. LEXIS 59955, 2020 WL 1674058 at *7.

Section 3553 (a) Factors

Although Defendant believes that he has established extraordinary and compelling reasons for compassionate release, section 3582 (c)(1)(A) requires the Court to also consider the factors set forth in 18 USC section 3553 (a), including "the nature and circumstances of the

9

offense and the history and characteristics of the defendant," the need for the sentence imposed

"to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense," the need for the sentence "to afford adequate deterrence to criminal

conduct," and "to protect the public from further crimes of the defendant," and the need "to

provide the defendant with needed educational or vocational training, medical care, or other

correctional treatment in the most effective manner." 18 USC section 3553 (a) (1), (2).

As to the "history and characteristics" of Defendant, in making this analysis, this court

can be guided by the Supreme Court's observation that "evidence of post-sentencing

rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.'"

Pepper v. United States, 562 U.S. 476, 491, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011).  As

detailed above, Defendant has undertaken extraordinary efforts at rehabilitation since his

incarceration. This remarkable post-sentencing record weighs strongly in favor of a sentencing

reduction.

Regarding "the need to protect the public from further crimes," it is well established that

there is zero chance that Defendant will reoffend.

Defendant's outstanding long-term prison record, lack of any significant disciplinary

history, and the letters of support submitted by prison staff regarding Defendant saving an

inmate's life, all attesting to Defendant's reformation, points to a changed man.  The BOP has

his Recidivism Risk Level at minimum. (Exhibit C, p. 8).  Thus, there is very little evidence to

suggest that Defendant would go out and commit new crimes.

Section 3553 (a) also requires that a sentence "reflect the seriousness of the offense,"

"promote respect for the law," and "provide just punishment for the offense."  Defendant was

sentenced to 38 years.  Numerous district courts have granted compassionate release to

individuals serving life without parole. United States v. Dusenbery, WL 6694408 (N.D. Oh. Nov. 13, 2020) (mandatory life sentence granted compassionate release); United States v. Gluzman, 2020 U.S. Dist. LEXIS 131749 (S.D.N.Y. July 23, 2020) (granting compassionate release to defendant convicted of the premeditated murder of her spouse and sentenced to life); United States v. Rodriguez, 2020 U.S. Dist. LEXIS 181004, 492 F. Supp. 3d 306 (S.D.N.Y. Sep . 30, 2020) (granting compassionate release to defendant convicted of murdering a government informant and sentenced to life); United States v. Rios, 2020 U.S. Dist. LEXIS 230074 (D. Conr Dec. 8, 2020) (Granting compassionate release to defendant convicted of VICAR murder and sentenced to life). Although the seriousness of a defendant's offense must be considered when determining whether a reduction is appropriate, it should be weighed alongside the other section 3553 (a) factors, particularly effective deterrence and public protection, and any other considerations the court deems important.

Defendant has served over 25 years of incarceration for this offense when the average sentence imposed for murder is 255 months. See U.S. Sentencing Comm., Overview of Federal Criminal Cases, Fiscal Year 2019, at 9 (2020). Also see United States v. Rios, 2020 U.S. Dist. LEXIS 230074 (D. Conn. Dec. 8, 2020). The Pandemic, aside from posing a threat to Defendant's health, has made Defendant's incarceration harsher and more punitive than would otherwise have been the case. This is because the Federal Prisons, as "prime candidates" for the spread of the virus, see United States v. Al Kassar, 480 F. Supp. 3d 582 (S.D.N.Y. Aug. 19, 2020), have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal. For someone with Defendant's health profile, the risk of suffering severe health consequences if he contracts Covid 19 again, coupled to the severe conditions imposed by the concomitant lockdowns and restrictions that are necessary to ensure

11

Defendant's safety, means that "the actual severity of [Defendant's] sentence as a result of the Covid-19 outbreak exceeds what the court anticipated at the time of sentencing." United States v. Mel, 2020 U.S. DIst. LEXIS 74491, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020).

Based on all of the above, releasing Defendant after 25 years of incarceration will "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense."

Finally, in assessing whether release is appropriate, this Court also considers whether a reduction "in a defendant's sentence would lead to substantial sentencing disparities with other criminal defendants convicted of similar conduct. Being that Defendant has served over 25 years of incarceration for this offense when the average sentence imposed for murder is 255 months, this case does not create impermissible sentencing disparities.

After consideration of the 3553 (a) factors, this Court should conclude that continued incarceration of Defendant, exposing him to potentially severe consequences of coronavirus infection is too harsh a sentence and in light of his extraordinary and compelling circumstances regarding his other issues and prison record, his motion for compassionate release should be granted.

## CONCLUSION

Based on the above, Defendant requests the Court to grant his compassionate release motion and reduce his sentence to time served. Defendant also requests this court to appoint counsel to help him litigate this case.

Respectfully submitted,

*Vito Guzzo*

Vito Guzzo
Defendant in pro per
Reg. No. 48164-053
FCI Danbury
Route 37
Danbury, CT 06811

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing this 23rd day of September 2022, was served upon the following:

Office of the U.S. Attorney
271 Cadman Plaza, E.
Brooklyn, N.Y. 11201

*Vito Guzzo*

Vito Guzzo

13

TRULINCS  48164053 - GUZZO, VITO - Unit: DAN-H-A

-------------------------------------------------------------------------------

FROM: 48164053
TO: Warden
SUBJECT: ***Request to Staff*** GUZZO, VITO, Reg# 48164053, DAN-H-A
DATE: 08/17/2022 06:03:12 PM

To: warden
Inmate Work Assignment: orderly

I am requesting a compassionate release. I am 57 years old and have many covid 19 risk factors. I have served almost 80% of my time and have completed over 60  classes for rehabilitation. I am requesting a review for compassionate release  due to covid 19 risk factors and the new covid 19 variants. Thank you for your time and consideration.

Exhibit A

Fw: ***Request to Staff*** GUZZO, VITO, Reg# 48164053, DAN-H-A

DAN-InmateToWarden (BOP) <DAN-InmateToWarden@bop.gov>

Thu 8/18/2022 11:50 AM

**From:** ~^! GUZZO, ~^!VITO <48164053@inmatemessage.com>
**Sent:** Wednesday, August 17, 2022 6:03 PM
**To:** DAN-InmateToWarden (BOP) <DAN-InmateToWarden@bop.gov>
**Subject:** ***Request to Staff*** GUZZO, VITO, Reg# 48164053, DAN-H-A

To: warden
Inmate Work Assignment: orderly

**ATTENTION**

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
55872025-2917-4fc5-9a67-f8cddf6cad79
Your response must come from the departmental mail box.  Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***

I am requesting a compassionate release. I am 57 years old and have many covid 19 risk factors. I have served almost 80% of my time and have completed over 60  classes for rehabilitation. I am requesting a review for compassionate release due to covid 19 risk factors and the new covid 19 variants. Thank you for your time and consideration.

Please See attached application, please complete and return.

Thank you
RAdamson 8/19/22

**Physical Condition** *Vito Guzzo's PSR Medical History*

265. In August 1990, the defendant was the victim of a shooting, and sustained injuries to his back and lungs. He was treated at Booth Memorial Hospital in Queens, New York, and underwent surgery to remove a bullet from his left lung. The defendant indicated that a portion of his lung was removed during this surgery. He remained hospitalized for eleven days following his surgery. Shortly thereafter, the defendant was admitted to St. John' Hospital in Queens, New York, after suffering an aneurism in his left arm. The defendant attributed his condition to the shooting and the subsequent surgery.

266. On March 13, 1996, the defendant was once again the victim of a shooting. As corroborated by a medical summary prepared by defense counsel, on this occasion, the defendant sustained six gunshot wounds to his face, neck, arm, and chest. He was taken to Elmhurst Hospital in Queens, New York, where an exploratory laparotomy, splenectomy, and partial pancreatectomy were performed. Subsequent x-rays revealed two fractured ribs, a fractured mandible, and bullet fragments in his chest. Also, during the shooting, one bullet apparently transected the right optic nerve. As a result, the defendant lost vision in that eye.

267. He remained at Elmhurst Hospital for twenty-seven days, and was mechanically ventilated for at least 96 consecutive hours. Additionally, the defendant suffered excessive bleeding from his nose with aspiration into his lungs, swelling in his face and neck, distended abdomen, hypoxia, an aneurism in the right lateral maxillary artery, mild respiratory distress and failure, abdominal bleeding, slurred speech, occluded artery, and an inability to breath through his nose.

268. On April 9, 1996, the defendant was transferred from Elmhurst Hospital to Mount Sinai Medical Center in New York, New York. He remained at this hospital for nine days. During this time, he underwent surgery to remove the bullet fragments in his chest, a papillotomy, and a gallstone removal. He was subsequently readmitted to Mount Sinai Medical Center for hypovolemia (decreased blood volume) and gastrointestinal bleeding. An endoscopy and a blood transfusion were performed.

269. Medical records from the above hospitals and the Bureau of Prisons have been requested, and responses are awaited. Neither the defendant, his attorney, nor his mother were able to provide medical records or bills for the defendant's treatment.

**Substance Abuse**

270. The defendant reported no history of drug or alcohol use. The defendant's mother indicated that she has never known him to use drugs or alcohol. Urinalysis results from the Bureau of Prisons have been requested, and a response is awaited.

*Exhibit B*



**Individualized Needs Plan - Program Review     (Inmate Copy)**     SEQUENCE: 00709623
Dept. of Justice / Federal Bureau of Prisons     Team Date: 05-27-2022
Plan is for Inmate: GUZZO, VITO  48164-053

| | | | | |
|---|---|---|---|---|
| Facility: | DAN DANBURY FCI | | Proj. Rel. Date: | 11-04-2029 |
| Name: | GUZZO, VITO | | Proj. Rel. Mthd: | GOOD CONDUCT TIME |
| Register No.: | 48164-053 | | DNA Status: | SCH03087 / 06-01-2011 |
| Age: | 57 | | | |
| Date of Birth: | 12-02-1964 | | | |

**Detainers**

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| DAN | ORD 8/H | ORDERLY FOR H DORM | 02-26-2022 |

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| DAN | ESL HAS | ENGLISH PROFICIENT | 02-25-1999 |
| DAN | GED HAS | COMPLETED GED OR HS DIPLOMA | 02-25-1999 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| DAN | | V-HOUSEKEEPING APPRENTICESHIP | 03-20-2022 | CURRENT |
| DAN M | C | HOME INSPECTOR TRAINING COURSE | 10-18-2021 | 11-22-2021 |
| DEV LOW | C | EMPLOYMENT RPP2/JOB SKILLS | 03-01-2021 | 03-12-2021 |
| DEV LOW | C | MONEY SMART RPP3/FINANCE | 02-01-2021 | 03-01-2021 |
| DEV LOW | C | ENHANCING YOUR VOCABULARY | 02-01-2021 | 03-01-2021 |
| DEV LOW | C | ACE OCEAN REALMS | 10-01-2020 | 11-01-2020 |
| DEV LOW | C | INSPIRING THEMES ACE CLASS 1 | 08-01-2020 | 10-03-2020 |
| DEV LOW | C | EMPLOYMENT RPP2/EMPLOY | 08-01-2020 | 08-23-2020 |
| DEV LOW | C | EMPLOYMENT RPP2/RESUME | 08-01-2020 | 08-23-2020 |
| DEV LOW | C | NFPT RPP1/HLTH | 11-24-2019 | 01-02-2020 |
| DEV LOW | C | BLOOD PRESSURE WELLNESS CLASS | 11-02-2019 | 03-01-2020 |
| DEV LOW | C | BUSINESS OF FITNESS/RPP1/HLTH | 11-28-2019 | 02-28-2020 |
| DEV LOW | C | INTRO TO NUTRITION | 08-15-2019 | 10-25-2019 |
| DEV LOW | C | MENS HEALTH LEISURE CLASS | 08-15-2019 | 10-25-2019 |
| DEV LOW | C | WEIGHT MANAGEMENT | 05-20-2019 | 07-29-2019 |
| DEV LOW | C | ANATOMY WELLNESS CLASS | 02-25-2019 | 05-06-2019 |
| DEV LOW | C | WEIGHT MANAGEMENT | 06-18-2019 | 08-20-2019 |
| SEA | W | STARTING A SMALL BUSINESS - FI | 04-12-2018 | 05-17-2018 |
| SEA | W | U.S. PRESIDENTS | 04-11-2018 | 05-16-2018 |
| SEA | C | STARTING A NON-PROFIT ORGANIZA | 02-14-2018 | 03-21-2018 |
| SEA | C | ENGLISH COMPOSITION & GRAMMAR | 02-13-2018 | 03-20-2018 |
| SEA | C | SMALL BUSINESS ADVERTISING | 12-06-2017 | 01-31-2018 |
| SEA | C | STARTING A SMALL BUSINESS - FI | 12-05-2017 | 01-30-2018 |
| SEA | C | MANAGING A SMALL BUSINESS | 10-12-2017 | 11-16-2017 |
| SEA | C | HOW TO FINANCE A SMALL BUSINES | 10-10-2017 | 11-14-2017 |
| SEA | C | WRITING A BUSINESS PLAN | 08-03-2017 | 09-14-2017 |
| SEA | C | SMALL BUSINESS MARKETING TECHN | 08-03-2017 | 09-14-2017 |
| SEA | C | SMALL BUSINESS ADVERTISING | 08-01-2017 | 09-04-2017 |
| SEA | W | HOW TO FINANCE A SMALL BUSINES | 06-07-2017 | 07-12-2017 |
| SEA | C | STARTING A SMALL BUSINESS - FI | 06-08-2017 | 07-13-2017 |
| SEA | C | SMALL BUSINESS MARKETING TECHN | 04-13-2017 | 05-18-2017 |
| SEA | C | TECHNICAL STOCK ANALYSIS | 04-12-2017 | 05-17-2017 |
| SEA | C | JOB SEARCH TECHNIQUES | 10-13-2016 | 11-17-2016 |
| SEA | W | BUILDING WEALTH | 06-06-2016 | 06-21-2016 |
| SEA | C | MEGA MEMORY CLASS | 04-07-2016 | 05-12-2016 |
| SEA | C | WALL STREET 101 | 04-05-2016 | 05-10-2016 |
| SEA | C | EAT FOR HEALTH/FIT FOR LIFE  1 | 10-20-2015 | 01-04-2016 |

Exhibit C



**Individualized Needs Plan - Program Review   (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: GUZZO, VITO  48164-053

SEQUENCE: 0070963
Team Date: 05-27-2022

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| SEA | C | INVESTING IN FUNDS          3 | 07-07-2015 | 07-28-2015 |
| SEA | C | EFFECIVE TIME MANAGEMENT SKILS | 08-14-2015 | 09-04-2015 |
| SEA | C | INCOME TAX CLASS | 07-01-2015 | 08-05-2015 |
| SEA | C | ADMISSION AND ORIENTATION | 06-29-2015 | 06-29-2015 |
| SEA | C | RELEASE REQUIREMENTS          5 | 06-29-2015 | 06-29-2015 |
| DAN M | C | ITALIAN ACE CLASS | 01-07-2015 | 03-16-2015 |
| SCH | C | ACE EMPIRE AND DYNASTY | 01-08-2014 | 01-30-2014 |
| SCH | C | BUSINESS PLANS 4 | 11-05-2013 | 11-27-2013 |
| SCH | C | HISTORY OF U.S.PRESIDENTS PT.1 | 11-06-2013 | 11-28-2013 |
| SCH | C | APPROPRIATE WRK HABITS | 10-17-2013 | 11-07-2013 |
| SCH | C | RESUME EDITING | 10-10-2013 | 11-01-2013 |
| SCH | C | ACE BODY ATLAS VIDEO SERIES | 09-09-2013 | 10-01-2013 |
| SCH | C | ENHANCE INTERVIEW SKILLS | 07-11-2013 | 08-02-2013 |
| SCH | C | CHESS OPENING COURSE | 07-24-2013 | 07-24-2013 |
| SCH | C | INCREASE PERSONAL PRODUCTIVITY | 06-06-2013 | 06-28-2013 |
| SCH | C | JOB CANDIDATES MARKETABILITY | 04-04-2013 | 05-02-2013 |
| SCH | C | REINVENTING SELF & LIFESTYLE | 04-04-2013 | 05-02-2013 |
| SCH | C | A FRESH START | 05-02-2013 | 05-30-2013 |
| SCH | C | RESEARCH SELF - JOB INTERVIEW | 02-07-2013 | 03-04-2013 |
| SCH | C | ACE GEOGRAPHY | 03-07-2013 | 03-30-2013 |
| SCH | C | REENTRY PLAN DEVELOPMENT | 01-09-2013 | 01-30-2013 |
| SCH | C | FCI ANGER MANAGEMENT | 11-20-2012 | 01-11-2013 |
| SCH | C | BUSINESS PLANS TWO | 10-03-2012 | 10-31-2012 |
| SCH | C | PRINCIPLES OF ECONOMICS PART 2 | 10-03-2012 | 10-25-2012 |
| SCH | C | RESUME BUILDING | 10-09-2012 | 10-30-2012 |
| SCH | C | WORLD AT WAR | 09-10-2012 | 10-02-2012 |
| SCH | C | FAMOUS AMERICAN VIDEO SERIES | 10-09-2012 | 10-23-2012 |
| SCH | C | ACE BUSINESS PLANS | 09-05-2012 | 09-25-2012 |
| SCH | C | PRINCIPLES OF ECONOMICS PART 1 | 09-10-2012 | 09-24-2012 |
| SCH | C | WORLD AT WAR VIDEO 1 | 09-10-2012 | 09-24-2012 |
| SCH | C | PROFESSIONAL WRITING EVERY DAY | 09-18-2012 | 09-25-2012 |
| SCH | C | HISTORY OF NEW YORK VIDEO SERI | 08-08-2012 | 08-15-2012 |
| SCH | C | LIFELONG HEALTH | 06-04-2012 | 06-25-2012 |
| SCH | C | CHESS OPENING COURSE | 02-28-2012 | 05-08-2012 |
| SCH | C | ACE UNIVERSE VIDEO SERIES | 04-16-2012 | 04-30-2012 |
| SCH | C | HOW TO START A CONVERSATION | 04-04-2012 | 04-18-2012 |
| SCH | C | CONCERT VIDEOS 2 | 04-02-2012 | 04-10-2012 |
| SCH | C | GET RIGHT WITH YOUR TAXES | 03-11-2012 | 04-08-2012 |
| SCH | C | FIRST IMPRESSIONS | 01-04-2012 | 01-18-2012 |
| SCH | C | FOREIGN FILM CLASS | 09-06-2011 | 01-31-2012 |
| SCH | C | ADV DRUG LIFESTYLES | 06-30-2011 | 08-25-2011 |
| SCH | C | FAMOUS BATTLES PART 3 | 03-03-2011 | 03-25-2011 |
| SCH | C | ADV DRUG LIFESTYLES | 01-05-2011 | 03-23-2011 |
| SCH | C | ADV CRIMINAL LIFESTYLES | 03-25-2010 | 08-25-2010 |
| SCH | C | ADV DRUG LIFESTYLES | 09-02-2010 | 04-26-2011 |
| SCH | C | ACE SPORTS CHAMPIONS VIDEOS | 02-03-2011 | 02-25-2011 |
| SCH | C | ACE VIKINGS VIDEOS PART 1 | 01-06-2011 | 01-13-2011 |
| SCH | C | HISTORY OF U.S.PRESIDENTS PT.2 | 11-08-2010 | 11-16-2010 |
| SCH | C | HISTORY OF U.S.PRESIDENTS PT.1 | 10-18-2010 | 11-02-2010 |
| SCH | C | ANCIENT EMPIRES/DYNASTIES PT 2 | 07-12-2010 | 08-03-2010 |
| SCH | C | ACE SMALL BUSINESS | 08-09-2010 | 08-24-2010 |
| SCH | C | ADV CRIMINAL LIFESTYLES | 06-16-2010 | 08-25-2010 |
| SCH | C | ACE UNIVERSE VIDEO SERIES | 07-01-2010 | 07-30-2010 |
| SCH | C | ACE SCIENCE OF MUSIC VIDEO | 06-17-2010 | 06-25-2010 |
| SCH | C | ACE EMPIRE AND DYNASTY | 06-07-2010 | 06-22-2010 |
| SCH | C | THE CIVIL WAR | 05-03-2010 | 05-25-2010 |
| SCH | C | HISTORY OF ROCK AND ROLL | 04-08-2010 | 05-06-2010 |



**Individualized Needs Plan - Program Review**   (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

SEQUENCE: 00709623
Team Date: 05-27-2022

Plan is for inmate: GUZZO, VITO  48164-053

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| SCH | C | ACE SCREEN PLAY WRITING 1 | 02-04-2010 | 02-26-2010 |
| SCH | C | ACE MUSIC VIDEOS | 03-04-2010 | 03-12-2010 |
| SCH | C | ADV GAMBLING LIFESTYLES | 09-21-2009 | 03-22-2010 |
| SCH | C | FUNCTIONAL RESUME | 01-13-2009 | 02-02-2010 |
| SCH | C | ACE HUMAN BODY VIDEO SERIES | 02-02-2010 | 02-24-2010 |
| SCH | C | INTRODUCTION TO CULINARY ARTS | 02-09-2010 | 02-24-2010 |
| SCH | C | ACE ANCIENT ROME VIDEO | 02-08-2010 | 02-09-2010 |
| SCH | C | COMMERCIAL DRIVER'S LICENSE | 01-05-2010 | 01-27-2010 |
| SCH | C | PLANET EARTH VIDEO SERIES | 12-08-2009 | 01-27-2010 |
| SCH | C | HISTORY OF DINOSAURS | 01-04-2010 | 01-26-2010 |
| SCH | C | ACE CURRENT EVENTS PT 2 | 12-07-2009 | 12-29-2009 |
| SCH | C | ACE SHAKA ZULU VIDEO SERIES | 12-01-2009 | 12-29-2009 |
| SCH | C | SCREEN PLAY WRITING PART 4 | 10-08-2009 | 10-30-2009 |
| SCH | C | ADV GAMBLING LIFESTYLES | 03-30-2009 | 09-14-2009 |
| SCH | C | LIBERTY: AMERICAN REVOLUTION V | 07-08-2009 | 07-23-2009 |
| SCH | C | ACE MUSIC THEORY | 06-01-2009 | 06-22-2009 |
| SCH | C | NATURE VIDEO SERIES | 06-04-2009 | 06-26-2009 |
| SCH | C | AMERICAN BIOGRAPHIES | 05-12-2009 | 05-27-2009 |
| SCH | C | ADV CRIMINAL LIFESTYLES | 09-24-2008 | 03-25-2009 |
| SCH | C | FUNCTIONAL RESUME | 01-20-2009 | 03-24-2009 |
| SCH | C | JOB HUNTER FCI | 11-10-2008 | 12-15-2008 |
| SCH | C | SCREEN PLAY WRITING PART 3 | 11-05-2008 | 12-01-2008 |
| SCH | C | PERSONAL FINANCE FCI | 10-27-2008 | 12-02-2008 |
| SCH | C | ACE SCREEN PLAY WRITING 2 | 10-08-2008 | 10-30-2008 |
| SCH | C | LIFE STYLE ISSUES | 07-01-2008 | 09-09-2008 |
| SCH | C | PLANET EARTH VIDEO SERIES | 09-04-2008 | 09-29-2008 |
| SCH | C | ACE SCREEN PLAY WRITING 1 | 09-03-2008 | 09-29-2008 |
| SCH | C | WEIGHT MANAGEMENT | 04-08-2008 | 04-16-2008 |
| SCH | C | NUTRITION | 02-19-2008 | 02-28-2008 |
| SCH | C | CERAMICS1 | 02-21-2008 | 02-29-2008 |
| LEE | C | MOVIE CRITIC PROGRAM | 01-19-2005 | 01-21-2005 |
| LEE | C | STOCKS,BONDS,&TRADE ANALYSIS | 10-10-2004 | 01-14-2005 |
| LEE | C | MOVIE CRITIC PROGRAM | 10-06-2004 | 10-15-2004 |
| LEE | C | INTRODUCTION TO BUSINESS MGMT | 07-19-2004 | 09-26-2004 |
| LEE | C | BASIC REAL-ESTATE COURSE | 07-13-2004 | 09-26-2004 |
| LEE | C | MOVIE CRITIC PROGRAM | 07-13-2004 | 07-16-2004 |
| LEE | C | MOVIE CRITIC PROGRAM | 06-09-2004 | 06-11-2004 |
| MAR | C | ACE/CURRENT EVENTS FALL SEM. | 11-03-2003 | 01-30-2004 |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|--------------|-----------------|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

**Current Care Assignments**

| Assignment | Description | Start |
|------------|-------------|-------|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 03-07-2007 |
| CARE1-MH | CARE1-MENTAL HEALTH | 06-18-2010 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|------------|-------------|-------|
| C19-T NEG | COVID-19 TEST-RESULTS NEGATIVE | 06-21-2021 |
| LOWER BUNK | LOWER BUNK REQUIRED | 06-17-2021 |
| MED HOLD | MEDICAL HOLD - DO NOT TRANSFER | 06-10-2021 |
| PAPER | LEGACY PAPER MEDICAL RECORD | 05-24-2019 |
| REG DUTY | NO MEDICAL RESTR–REGULAR DUTY | 05-10-2018 |
| YES F/S | CLEARED FOR FOOD SERVICE | 06-13-2018 |

**Current Drug Assignments**



**Individualized Needs Plan - Program Review   (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: GUZZO, VITO   48164-053

SEQUENCE: 00709623
Team Date: 05-27-2022

| Assignment | Description | Start |
|---|---|---|
| DAP NO INT | DRUG ABUSE PROGRAM NO INTEREST | 08-02-2017 |
| DRG I NONE | NO DRUG INTERVIEW REQUIRED | 03-07-1999 |

## FRP Payment Plan

Most Recent Payment Plan

**FRP Assignment:**   COMPLT   FINANC RESP-COMPLETED   **Start: 03-20-2001**

Inmate Decision: **AGREED**   **$50.00**   Frequency: **MONTHLY**
Payments past 6 months:   **$0.00**   Obligation Balance: **$0.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $1050.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

## FRP Deposits

Trust Fund Deposits - Past 6 months:   $4,866.80   Payments commensurate ?   Y

New Payment Plan:   ** No data **

## Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| FTC ELIG. | FTC-ELIGIBLE - REVIEWED | 01-02-2020 |
| N-ANGER Y | NEED - ANGER/HOSTILITY YES | 01-16-2022 |
| N-ANTISO R | NEED - ANTISOCIAL PEERS REFUSE | 01-16-2022 |
| N-COGNTV R | NEED - COGNITIONS REFUSE | 01-16-2022 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-28-2021 |
| N-EDUC N | NEED - EDUCATION NO | 01-16-2022 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 01-16-2022 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 01-16-2022 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 01-16-2022 |
| N-MEDICL N | NEED - MEDICAL NO | 01-16-2022 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 01-16-2022 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 01-16-2022 |
| N-TRAUMA Y | NEED - TRAUMA YES | 04-13-2022 |
| N-WORK Y | NEED - WORK YES | 01-16-2022 |
| R-MIN | MINIMUM RISK RECIDIVISM LEVEL | 05-27-2022 |

## Progress since last review

Since last review, no ACE courses completed. Long Term Goal Progress: Since last review, enrolled in V-HOUSEKEEPING APPRENTICESHIP. General Progress: Since last review, clear conduct maintained. Four FSA courses completed to date.

## Next Program Review Goals

We again recommend you complete two sentry based ACE, wellness or VT courses by next review in 11/22.

## Long Term Goals

ENROLL IN AN APPRENTICESHIP PROGRAM SEE EDUCATION DEPARTMENT FOR DETAILS AND COMPLETE AS INSTRUCTED BY EDUCATION. Be enrolled in a program and complete 1000 hours by 11/25/23.

## RRC/HC Placement

No.
Management decision - Note: You will be reviewed for RRC placement at least 17-19 months before your release date pursuant to the Second Chance Act..

## Comments

Note: You will be reviewed for RRC placement at least 17-19 months before your release date pursuant to the Second Chance Act.

Pursuant to the First Step Act of 2018 sections 101 &102, 18USC3632, and Program Statement 5400.01, First Step Act Needs Assessment, the 13 identified need areas have been reviewed in this case by the departments responsible for each area. Based upon this review, it has been determined First Step Act needs exist in the following areas (ANGER/HOSTILITY, FINANCE/POVERTY, WORK). In order to effectively address these needs, it recommended you enroll/complete Evidence-Based Recidivism Reduction Programs and/or Productive Activities in the departments responsible for each needs area identified above. The Unit Team recommends you complete these courses by



## Individualized Needs Plan - Program Review   (Inmate Copy)
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: GUZZO, VITO  48164-053

SEQUENCE: 00709623
Team Date: 05-27-2022

4/22/2024. The Unit Team recommends you complete Money Smart to satisfy the Finance Needs area by 5/25/23.

```
    DANG5  540*23 *              SENTENCE MONITORING        *      05-27-2022
    PAGE 001        *            COMPUTATION DATA           *      14:12:52
                                 AS OF 05-27-2022

    REGNO..: 48164-053 NAME: GUZZO, VITO


    FBI NO..........: 612914CA1          DATE OF BIRTH: 12-02-1964  AGE:  57
    ARS1............: DAN/A-DES
    UNIT............: E                   QUARTERS.....: H04-034L
    DETAINERS.......: NO                  NOTIFICATIONS: NO

    FSA ELIGIBILITY STATUS IS: ELIGIBLE

    THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

    HOME DETENTION ELIGIBILITY DATE....: 05-04-2029

    THE INMATE IS PROJECTED FOR RELEASE: 11-04-2029 VIA GCT REL


    ---------------------CURRENT JUDGMENT/WARRANT NO: 010 ---------------------

    COURT OF JURISDICTION...........: NEW YORK, EASTERN DISTRICT
    DOCKET NUMBER...................: 95 CR 0754(SJ)
    JUDGE...........................: JOHNSON, JR.
    DATE SENTENCED/PROBATION IMPOSED: 10-16-1998
    DATE COMMITTED..................: 02-16-1999
    HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
    PROBATION IMPOSED...............: NO


                    FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
    NON-COMMITTED.: $1,050.00       $00.00         $00.00       $00.00

    RESTITUTION...:  PROPERTY: NO  SERVICES: NO        AMOUNT: $00.00

    ------------------------CURRENT OBLIGATION NO: 010 -------------------------
    OFFENSE CODE....: 545      18:1962 RACKETEER (RICO)
    OFF/CHG: 18 USC 1962(C)&(D);1959(A)(1),(A)(3),(A)(5)&(A)(6); 1951:
             CONSP/RACKETEERING; CONSP/MURDER IN AID OF RACKETEERING;CONSP/
             ARMED ROBBERY; CONSP/VIOLENT CRIME IN AID OF RACKETEERING

     SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
     SENTENCE IMPOSED/TIME TO SERVE.:   456 MONTHS
     TERM OF SUPERVISION............:     5 YEARS
     CLASS OF OFFENSE...............: CLASS A FELONY
     DATE OF OFFENSE................: 09-14-1998




    G0002       MORE PAGES TO FOLLOW . . .
```

```
DANG5  540*23 *            SENTENCE MONITORING         *       05-27-2022
PAGE 002 OF 002 *          COMPUTATION DATA            *       14:12:52
                           AS OF 05-27-2022
```

REGNO..: 48164-053  NAME: GUZZO, VITO


-------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 04-06-2020 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 04-16-2010 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 10-16-1998
TOTAL TERM IN EFFECT............: 456 MONTHS
TOTAL TERM IN EFFECT CONVERTED..: 38 YEARS
EARLIEST DATE OF OFFENSE........: 09-14-1998

JAIL CREDIT.....................:    FROM DATE     THRU DATE
                                    04-08-1997    10-15-1998

TOTAL PRIOR CREDIT TIME.........: 556
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 1981
TOTAL GCT EARNED................: 1279
STATUTORY RELEASE DATE PROJECTED: 11-04-2029
ELDERLY OFFENDER TWO THIRDS DATE: 08-08-2022
EXPIRATION FULL TERM DATE.......: 04-08-2035
TIME SERVED.....................:    25 YEARS      1 MONTHS      20 DAYS
PERCENTAGE OF FULL TERM SERVED..: 66.1
PERCENT OF STATUTORY TERM SERVED: 77.1

PROJECTED SATISFACTION DATE.....: 11-04-2029
PROJECTED SATISFACTION METHOD...: GCT REL
```

REMARKS.......: 04-14-10: COMP ASSUMED BY DSCC; DIS & FFT GCT TAKEN. SPS/D
                12-13-10: DIS & FFT GCT RESTORED. SPS/D  05-30-14: DIS GCT.
                D/SPS. 4/6/20: FSA/GCT UPD D/JNW.


G0000       TRANSACTION SUCCESSFULLY COMPLETED

## FSA Recidivism Risk Assessment (PATTERN 01.03.00)

Register Number:48164-053, Last Name:GUZZO

**U.S. DEPARTMENT OF JUSTICE**                              **FEDERAL BUREAU OF PRISONS**

Register Number: 48164-053

Inmate Name

  Last.........: GUZZO

  First........: VITO

  Middle.......:

  Suffix.......:

Gender.........: MALE

Risk Level Inmate....: R-MIN

  General Level......: R-MIN (-6)

  Violent Level......: R-MIN (5)

Security Level Inmate: LOW

Security Level Facl..: LOW

Responsible Facility.: DAN

Start Incarceration..: 10/16/1998

### PATTERN Worksheet Summary

| Item | - Value | - General Score | - Violent Score |
|---|---|---|---|
| Current Age | 57 | 7 | 4 |
| Walsh w/Conviction | FALSE | 0 | 0 |
| Violent Offense (PATTERN) | FALSE | 0 | 0 |
| Criminal History Points | 0 | 0 | 0 |
| History of Escapes | 0 | 0 | 0 |
| History of Violence | 3 | 3 | 6 |
| Education Score | HighSchoolDegreeOrGED | -2 | -2 |
| Drug Program Status | NoNeed | -6 | -3 |
| All Incident Reports (120 Months) | 2 | 2 | 2 |
| Serious Incident Reports (120 Months) | 2 | 2 | 2 |
| Time Since Last Incident Report | 86 | 0 | 0 |
| Time Since Last Serious Incident Report | 86 | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 66 | -12 | -4 |
| Work Programs | 0 | 0 | 0 |
| | | Total   -6 | 5 |

**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

---

October 15, 1998

*U.S. Customs House - 7th Floor*
*2nd and Chestnut Streets*
*Philadelphia, PA 19106*

Jason L. Solotaroff
Attorney at Law
1585 Broadway,19th Floor
New York, NY 10036

Re: Your Request For Information, Request No. 99-1

Dear Mr. Solotaroff:

This is in response to your request, which was received in this office on October 13, 1998, wherein you request a copy of all documents pertaining to an attempted suicide on July 7, 1998 at the Metropolitan Correctional Center (MCC) New York.

In response to your request, five (5) pages of records were forwarded to this office for a determination of releasability to you.  Upon review, it has been determined that one (1) page is releasable to you in its entirety and four (4) pages are releasable with information excised.

Four (4) pages have been excised because they contain third party information and information intended for staff use only.  Release of this information could constitute an unwarranted invasion of personal privacy.  The statutory basis for these excisions is 5 U.S.C. section 552 (b)(7)(C).

I trust this has been responsive to your request.  However, if you are dissatisfied with this response, you may appeal to the Attorney General by filing a written appeal within 60 days of your receipt of this response to: Attorney General, Office of Information and Privacy, United States Department of Justice, FLAG Bldg., Suite 540, N.W. Washington, D.C. 20530.

Sincerely,

Henry J. Sadowski
Regional Counsel

enclosures: 5 pages

cc: file

Exhibit D



U.S. Department of Justice

Federal Bureau of Prisons

*Metropolitan Correctional Center*

150 Park Row
New York, NY 10007

October 14, 1998

Honorable Sterling Johnson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Johnson:

I wish to inform the court that defendant Vito Guzzo, while housed at the Metropolitan Correctional Center, New York, acted in a responsible manner, notifying staff of an inmate who made a serious suicide attempt. Mr. Guzzo's actions assisted our staff in possibly preventing an inmate death.

Sincerely,

Dennis W. Hasty
Warden

cc:   File

DW:er



UNITED STATES GOVERNMENT

# MEMORANDUM

METROPOLITAN CORRECTIONAL CENTER
NEW YORK, NEW YORK

DATE: 7 July 1998

REPLY TO
ATTN. OF: Lieutenant E. Mulroney

SUBJECT: Attempted suicide 5 North

TO:   Captain N. Aponte


On 7 July 1998, at approximately 3:10 PM, a body alarm was activated on unit 5 North.  Upon arrival inmate (b)(7)(C) was lying on the floor on A tier he had red marks on his neck.  P.A. was called and psychology was called.  Responding staff escorted the inmate to the second floor medical department, and examined the inmate, psychology placed the inmate on suicide watch. The following is an account of what transpired:

Officer J. DeJesus heard inmates yelling to go to A tier, upon arrival he saw inmate (b)(7)(C)          lying on the floor with strips of sheets around his neck.  Another inmate Guzzo, Vito # 48164-053 attempting to rip the sheets off from around his neck. He immediately activated, and responding staff transported the inmate to the second floor urgent treatment room.

Inmate Guzzo, Vito # 42164-053 was interviewed and stated that he was in cell A-501 and asked (b)(7)(C) if he wanted coffee; he  went to get coffee and came back and saw (b)(7)(C) hanging from the pipe on the ceiling from what he thought was a torn bed sheet.   He lifted up the body, and ripped the sheet down.   Responding staff then took over.

Inmate (b)(7)(C) was placed on suicide watch on the second floor. Inmate was examined by medical staff and found to have redness on his neck.



UNITED STATES GOVERNMENT
**MEMORANDUM**
METROPOLITAN CORRECTIONAL CENTER
NEW YORK, NEW YORK

**DATE:** July 7, 1998

**REPLY TO
ATTN OF:** J. DeJesus

**SUBJECT:** Suicide attempt by Inmate (b)(7)(C)

**TO:** Lieutenant Mulroney

On July 7,1998 at approximately 3PM I was in the CO office on Unit 5 North when I heard inmates yelling for me to go to A Tier. I proceeded to A-Tier and upon arrival observed Inmate (b)(7)(C) lying on the floor being held by Inmate V. Guzzo 48164-053. Inmate (b)(7)(C) was having difficulty breathing due to having a strip of cloth tied around his neck. Inmate Guzzo was attempting to remove it but was unsuccesful. Inmate Guzzo then used a razor and was able to cut the cloth. Inmate (b)(7)(C) began coughing forcefully and began crying. I hit the body alarm immediately after observing Inmate (b)(7)(C) on the floor while ordering other inmates to lock down. At approximately 3:02 PM a number of staff members entered the unit to assist me in locking down the unit. Inmate (b)(7)(C) was able to stand up and was escorted out of the unit by several staff members. Lt. Mulroney instructed me to lock up cell 502 where the incident occurred. I locked up cell 502 at approximately 3:10 PM and did not allow anyone to enter it. I briefed the oncoming evening watch as to Lt. Mulroney's instructions about cell 502. At approximately 3:30PM Inmate V. Guzzo was escorted out of the unit by Officer Cavalon.



UNITED STATES GOVERNMENT
# MEMORANDUM
METROPOLITAN CORRECTIONAL CENTER
NEW YORK, NEW YORK

DATE: 7-7-98

REPLY TO
ATTN. OF: Lieutenant M. Barry

SUBJECT: Suicide Attempt on 5 North

TO: Investigative Lieutenant

On 7-7-98 at approximately 3:10 P.M. a body alarm was announced
in 5 North.  Upon arrival to Unit 5 North I responded to A Tier
and found inmate (b)(7)(C)                    on floor of his cell.
I pulled inmate (b)(7)(C) out of his cell and laid him down on the
floor of A-Tier and awaited the arrival of medical staff.  While
the inmate was laying on the floor I observed, what appeared to
be  red marks on either side of his neck.  Each of these marks
appeared to be approximately three to four inches in length.
After medical staff arrived the inmate was escorted to the Health
Services Department on the second floor without further incident.

After the inmate left I entered his cell.  I found what appeared
to be a torn bed sheet tied around a conduit pipe attached to the
ceiling of his cell. Another piece of sheet, which was cut from
around the inmate's neck by another inmate prior to responding
staff's arrival.

**1. NAME OF INSTITUTION**

MCC NEW YORK

## PART I – INCIDENT REPORT

| 2. NAME OF INMATE | 3. REGISTER NUMBER | 4. DATE OF INCIDENT | 5. TIME |
|---|---|---|---|
| (b)(7)(C) | (b)(7)(C) | JULY 7, 98 | 3PM |

| 6. PLACE OF INCIDENT | 7. ASSIGNMENT | 8. UNIT |
|---|---|---|
| 5 NORTH CELL 502 | UNASSIGNED | 5 NORTH |

| 9. INCIDENT | 10. CODE |
|---|---|
| SELF MUTILATION | 403 |

**11. DESCRIPTION OF INCIDENT** (Date: 7/7/98 Time: 3PM Staff became aware of incident)

ON THE ABOVE DATE AND TIME, I WITNESSED INMATE (b)(7)(C) LYING ON THE FLOOR BEING HELD BY INMATE GUZZO #48164-053. INMATE (b)(7)(C) HAD WHAT APPEARED TO BE A STRIP OF CLOTH AROUND HIS NECK AND INMATE GUZZO APPEARING TO BE CUTTING THE CLOTH. I ACTIVATED MY BODY ALARM AND INMATE (b)(7)(C) BEGAN COUGHING AND CRYING. RESPONDING STAFF ARRIVED AND ESCORTED THE INMATE FROM THE AREA.

| 12. SIGNATURE OF REPORTING EMPLOYEE | DATE AND TIME | 13. NAME AND TITLE (Printed) |
|---|---|---|
| J DEJESUS | JULY 7, 98 4PM | J DEJUSUS |

| 14. INCIDENT REPORT DELIVERED TO ABOVE INMATE BY | 15. DATE INCIDENT REPORT DELIVERED | 16. TIME INCIDENT REPORT DELIVERED |
|---|---|---|
| | | |

## PART II – COMMITTEE ACTION

**17. COMMENTS OF INMATE TO COMMITTEE REGARDING ABOVE INCIDENT**

18. A. IT IS THE FINDING OF THE COMMITTEE THAT YOU COMMITTED THE FOLLOWING PROHIBITED ACT

B. THE COMMITTEE IS REFERRING THE CHARGE(S) TO THE DHO FOR FURTHER HEARING.
THE COMMITTEE ADVISED THE INMATE OF ITS FINDINGS AND OF THE RIGHT TO FILE AN APPEAL WITHIN 15 CALENDER DAYS

DID NOT COMMIT A PROHIBITED ACT

19. COMMITTEE DECISION IS BASED ON THE FOLLOWING INFORMATION

COMMITTEE ACTION AND/OR SANCTIONS (SANCTIONS D OR E MAY BE CONTINGENT UPON DHO FINDING INMATE COMMITTED PROHIBITED ACT

DATE AND TIME OF ACTION

THE UDC CHAIRMAN'S SIGNATURE & NAME CERTIFIES

MEMBER (Typ. Name)

DHO



EXPECTED DELIVERY DAY: 09/26/22

USPS TRACKING® #

9505 5158 6201 2266 7284 00

1004

U.S. POSTAGE PAID

KENT, OH

44240

SEP 22 '22

AMOUNT

**$8.95**

R2304E105386-08

11201

FROM:

Vito Guzzo
Reg. No. 48164-053
FCI Danbury
Route 37
Danbury, CT 06811

TO:

Clerk of Court
U.S. District Court
225 Cadman Plaza E.
Brooklyn, NY 11201

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY MAIL

■ Expected delivery date specified for domestic use.
■ Most domestic shipments include up to $50 of insurance (restrictions apply).*
■ USPS Tracking® included for domestic and many international destinations.
■ Limited international insurance.**
■ When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

**FLAT RATE ENVELOPE**

ONE RATE ■ ANY WEIGHT

**TRACKED ■ INSURED**

EP14F May 2020
OD: 12 1/2 x 9 1/2

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP



PS00000100014